In the Matter of **RABER INDUSTRIES, INC.,** Debtor.

**Bankruptcy No. 78–1438 T.**

United States District Court, M. D. Florida, Tampa Division.

Dec. 29, 1980.

Francis H. Cobb, Tampa, Fla., for Raber Industries, Inc.

C.I.T. Corp., pro se.

Douglas P. McClurg, Jacksonville, Fla., for CIT Corporation.

## ORDER ON OBJECTION TO CLAIM NO. 90

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration is an objection to Claim No. 90 filed by Raber Industries, Inc. (Raber), the Debtor involved in the above–captioned pre–Code arrangement proceeding.

In order to put this matter in proper focus it should be helpful to briefly outline the events which led up to Raber's objection.

Prior to the Chapter XI petition filed by Raber on December 15, 1978, Raber was indebted to CIT in an undisputed $129,690 secured by a piece of heavy equipment (crane).

On May 31, 1979, Raber filed an application to abandon the crane to CIT or to such parties as CIT might direct. On June 18, 1979, this Court entered its order and approved the application and authorized the Debtor to abandon the crane.

Shortly thereafter, CIT solicited offers for the purchase of the crane and according to the affidavit of Mr. D. L. Lansbury (CIT's Exh. F attached to the amended proof of claim), received 10 offers ranging from $90,000 to $112,000.

CIT ultimately decided to accept an offer from Mr. Crandal Hagan who acted on behalf of Oid's Crane Service of Sarasota, Florida. The gross sale price of that offer was for $125,000, however, the sale produced only $118,000, inasmuch as $5,000 of the sale price was paid as a commission to Mr. Hagan. In addition CIT agreed to credit the purchase with $2,000 for repairs allegedly needed to put the crane in proper working order.

Immediately following the sale, CIT filed its proof of claim based on an unsecured deficiency in the amount of $11,690. Raber shortly thereafter filed its objection to CIT's claim which is the subject matter of this controversy.

It is the contention of Raber that the repairs made by CIT were unnecessary and

further, that the crane's hook, which CIT claims it had to replace was not missing from the crane when Raber made delivery to CIT. In addition, so contends Raber, there is no evidence that the $5,000 commission deducted from the sale price of the crane was necessary or reasonable and further, that CIT never applied to this Court for permission to hire and pay a broker on commissions. According to Raber, CIT could have applied to this Court for permission to engage a broker in advance of the sale, which it did not do. Thus, CIT now seeks retroactive approval of retention of a broker and the payment of the broker's commission.

■ First it is essential to point out what is and what is not involved in this controversy. This case does not involve a question of whether or not the sale was accomplished in a commercially reasonable manner which is, of course, a condition precedent to the allowability of any deficiency claim under the applicable provisions of the UCC as adopted in this State, Chapter 679.-9–504. CIT exerted reasonable efforts to obtain the highest and best price and it is not contended by Raber that the purchase price obtained did not represent the fair market value of the crane although it was intimated by Raber that the crane was worth $120,000. What is involved in this case is the propriety of the deduction from the gross sales price, the $5,000 commission and the deduction of the sum of $2,000 allegedly spent by CIT to repair the crane.

As noted earlier, Raber sought and obtained an authorization from this Court to abandon the crane as a burdensome asset. Once the order which authorized the abandonment was entered, this Court relinquished all jurisdiction over the property and the relinquishment or control over the manner of liquidating the collateral to assure that the liquidation was in conformity with generally accepted commercial practices prevailing in the industry and in compliance with other requirements of Chapter 679.504 of the Florida Statutes. CIT certainly did not have the obligation to seek permission from this Court to employ what-

ever means were reasonable to liquidate its collateral including the engaging of a broker to effectuate the sale. In the absence of showing that the commission paid to the broker was a result of a collusion with the broker or it was just a sham either because, in fact, was not paid at all or that the amount claimed was not the amount paid, this Court must recognize CIT's right to pay the broker's commission.

■ The evidence presented on the necessity of the repairs was in conflict. By virtue of § 57(a) of the Bankruptcy Act and Bankruptcy Rule 301(b), a proof of claim executed and filed in accordance with the Rules constitutes prima facie evidence of the validity in the amount of the claim. The right to file an unsecured claim for deficiency by a secured creditor is recognized by § 57(h) of the Bankruptcy Act and by Bankruptcy Rule 306(d) and as noted earlier, if CIT is entitled to a deficiency claim, it has a right to have the same allowed unless the objector is able to overcome the prima facie validity of the claim. The burden to establish this is, of course, on the objecting party and if the evidence is in equilibrium, the objector failed to carry the burden placed on the objector by law.

In light of the foregoing, this Court is satisfied that the most that could be said that the evidence presented in support and opposition of this issue is in equal balance, therefore, Raber failed to overcome the presumptive validity of the claim.

In accordance with the foregoing, it is

ORDERED, ADJUDGED AND DECREED that the objection to claim # 90 in the amount of $11,690 be, and the same hereby is, overruled and said claim is allowed as a general unsecured claim in the amount stated.